UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RAMON K. JUSINO and ANN M. JUSINO,

                                Plaintiffs,

                 v.

THE NEW YORK CITY DEPARTMENT OF
EDUCATION,

                                Defendant.

**MEMORANDUM AND ORDER**

22-cv-853 (LDH) (ST)

---

L**A**SHANN D**E**ARCY HALL, United States District Judge:

    Ramon K. Jusino and Ann M. Jusino ("Plaintiffs") bring the instant action against the New York City Department of Education (the "DOE" or "Defendant"), for violations of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), the New York State Human Rights Law ("NYCHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint, in part.

## BACKGROUND[1]

    Plaintiffs are the parents and legal guardians of 18-year-old W.J., who is a largely non-verbal autistic student. (Compl. ¶¶ 3,16, ECF No. 1.) W.J. is currently enrolled as a student at a school located in District 75 established for students with special needs. (*Id.* ¶ 3.) In July 2015, Plaintiffs began using a teaching method and accommodation called the Rapid Prompting Method ("RPM") for W.J. (*Id.* ¶ 24.) RPM teaches children how to express themselves by gradually mastering a sequence of learning pragmatic cognitive and motor skills. (*Id.* ¶¶ 27,

---

[1] The following facts taken from the complaint are assumed to be true for the purpose of this memorandum and order, unless otherwise stated.

1

29–30.) Between July 1, 2015 and November 5, 2017, Plaintiffs and Defendant engaged in informal conversations about potentially incorporating RPM as an accommodation for W.J. (*Id.* ¶ 35.) On November 6, 2017, Defendant's school psychologist Cornelius Hodges evaluated W.J. using the RPM accommodation. (*Id.* ¶ 38.) The evaluation revealed that W.J. demonstrated a much higher potential in his cognitive functioning with the RPM method. (*Id.*) Despite the evaluation's findings, Defendant refused to incorporate the RPM accommodation into W.J.'s educational program. (*Id.* ¶ 42.)

    **I.**    **Plaintiff's Administrative Proceedings**

        **A. October 16, 2018 IHO Decision**

On February 28, 2018, Plaintiffs filed a Due Process Complaint, requesting, among other things, that W.J. be reevaluated using the RPM method. (Compl. ¶ 43.) On May 10, 2018, hearing on Plaintiffs' Due Process Complaint was held before Impartial Hearing Officer ("IHO") John Farago. (*Id.* ¶ 44.) After hearing testimony from various witnesses including Defendant's psychologist, IHO Farago ordered that W.J. undergo an Independent Educational Evaluation to determine if and how the RPM accommodation is useful to W.J. (*Id.* ¶ 48.) The hearing was adjourned pending the completion of the evaluation. (*Id.*) W.J. was evaluated in the summer of June 2018, and on October 4, 2018, IHO Farago continued the impartial hearing, where the results from the evaluation were entered into evidence. (*Id.* ¶ 51.) On October 16, 2018, IHO Farago issued his decision wherein he concluded that W.J.'s "performance with RPM is radically different than it is without RPM, and that the methodology need be incorporated into [W.J.'s] program if he is to be able to benefit from instruction." (*Id.* ¶ 52.) IHO Farago also determined that: Defendant should include RPM through a trained provider onto W.J's IEP for all of his instructional periods; that the Defendant should consider all recommendations found by the

clinical neuropsychologist and clinical psychologist, as set out in W.J.'s independent educational evaluation, for services in school and out; and that Defendant must reimburse Plaintiffs for all documented costs of providing RPM services to W.J. during the 2015-16, 2016-17, 2017-18 and 2018-19 school years. (*Id.*) On March 29, 2019, Defendant incorporated IHO Farago's findings into a new IEP ("March 29, 2019 IEP"). (*Id.* ¶ 54.)

### B. May 24, 2020 IHO Decision

On July 6, 2019, Plaintiffs filed a second due process complaint challenging certain aspects of Defendant's March 29, 2019 IEP and inclusion of the RPM accommodation. (Compl. ¶ 61.) On November 20, 2019, a second impartial hearing was held before IHO Edgar De Leon. (*Id.* ¶ 62.) On May 24, 2020, IHO Edgar De Leon determined that Defendant did in fact utilize the RPM accommodation with W.J. and also provided W.J. with a free appropriate public education for the 2019-2020 school year. (*Id.* ¶ 69.) Plaintiffs allege that this finding was erroneous. (*Id.*)

### C. August 6, 2020 Office of State Review Decision

Plaintiffs appealed the May 24, 2020 order to the Office of State Review in the New York State Education Department. (*Id.* ¶ 71.) On August 6, 2020, State Review Officer ("SRO") Justyn P. Bates issued a decision. (*Id.* ¶ 72.) In the decision, IHO Bates noted that Defendant's obligation to utilize RPM as accommodation for W.J. is not in dispute because Defendant did not appeal the October 16, 2018 Decision, and as a result, ordered Defendant to continue to provide the RPM methodology in on an ongoing basis. As with IHO De Leon, IHO Bates concluded that Defendant had used RPM as an accommodation and that W.J. had been provided with a free and appropriate education for the 2019-20 school year. (*Id.* ¶¶ 74–75.) Plaintiffs allege this finding was in error. (*Id.*)

### D.  August 31, 2021 IHO Decision

On April 3, 2020, while IHO Edgar De Leon's order was pending, Defendant wrote a new IEP for W.J.  (Compl. ¶ 76.)  This time, Defendant removed the use of RPM as an accommodation.  (*Id.*)  Plaintiffs became aware of the April 3, 2020 IEP on August 12, 2020, and filed a Due Process Complaint on August 14, 2020 (which was later amended on November 2, 2020).  (*Id.* ¶ 83.)  In their Due Process Complaint, Plaintiffs alleged that the April 3, 2020 IEP was "illicit," and that Defendant was not utilizing the mandated RPM accommodation with W.J.  (*Id.*)  On February 25, 2021, IHO Mindy Wolman commenced an impartial hearing on Plaintiff's complaint, which in turn continued to a late date.  (*Id.* ¶ 84.)  On April 15, 2021, IHO Wolman heard argument from Defendant's counsel Ms. Montolio conceded that Defendant failed to provide W.J. with a free appropriate education during the 2019-20 and 2020-2021 school years.  (*Id.* ¶ 87.)  Ultimately IHO Wolman concluded that Defendant did not utilize the RPM method in any of W.J.'s classes, though it was obligated to do so.  (*Id.* ¶ 91.)  IHO Wolman granted Plaintiffs' request for reimbursement for all documented costs of the home-based RPM services they provided to W.J. during the 2019-2020 school year.  (*Id.*)

While the complaint before IHO Wolman was pending, on March 23, 2021, Defendant held a meeting to discuss the "current" IEP for W.J.  (*Id.* ¶¶ 91–101.)  At the meeting, Plaintiffs noted that although Defendant restored the RPM accommodation in March 23, 2021 IEP, the IEP failed to include an RPM testing accommodation.  (*Id.* ¶ 97.)  Plaintiffs contacted Defendant's personnel about this omission and a second meeting was held on April 20, 2021 to discuss the issue.  (*Id.* ¶¶ 97–98.)  When asked to restore the RPM testing accommodation to W.J.'s IEP, Defendant's personnel advised Plaintiffs that Defendant's legal counsel specifically

4

instructed her to remove the accommodation from W.J.'s IEP. (*Id.* ¶ 99.) To date, the March 23, 2021 IEP does not include an RPM testing accommodation. (*Id.* ¶ 101.)

## II. Plaintiff's Federal Actions

In addition to the various due process complaints, Plaintiffs sought relief related to the utilization of an RPM accommodation for W.J.'s twice in federal court. *First*, on September 18, 2020, Plaintiffs filed *Jusino et al v. New York City Department of Education et al*, 20-cv-4387-LDH-ST ("*Jusino I*"). (*See Jusino I* Compl., 20-cv-4387, ECF No. 1.) In *Jusino I*, Plaintiffs requested a preliminary injunction requiring Defendant to continue reimbursing them for home-based lessons using the RPM methodology, as well as an order reversing SRO Bates's decision. (*See generally id.*) Defendant answered the complaint on November 12, 2020. (*Id.*, Def.'s Answer, ECF No. 12.) After IHO Wolman's August 31, 2021 order was issued, on January 5, 2022 (later corrected on May 15, 2022), this Court denied Plaintiffs' motion for a preliminary injunction as moot, and directed Defendant to reimburse Plaintiffs for at-home RPM services during the pendency of the litigation with respect to the 2019–2020 school year. (*Id.*, Jan. 5, 2022 and Mar. 15, 2022 Minute Entry and Orders.)

*Second*, on February 15, 2022, Plaintiffs filed this action against Defendant. Plaintiffs allege that Defendant's refusal to provide Plaintiffs with an RPM accommodation, as required, represents a deliberate indifference to Plaintiffs' federal protected rights, gross discrimination towards W.J., and retaliation against Plaintiffs for seeking and securing an administrative mandate that Defendant provide W.J. with an RPM accommodation as part of his IEP. (Compl. ¶¶ 100–110.) Plaintiffs further allege that as a result of Defendant's refusal to provide Plaintiffs with the RPM accommodation for W.J., W.J. has languished under Defendant's purview. (*Id.* ¶ 7.) Plaintiff seeks, among other remedies, compensatory damages totaling no less than

5

$150,000,000, punitive damages, a declaration that Plaintiffs are the "substantially prevailing parties," reimbursement of fees and expenses incurred in this action, and pre- and post-judgment interest. (*Id.* ¶¶ 115–136.)

## STANDARD OF REVIEW[2]

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject-matter jurisdiction exists. *Id.* "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

Moreover, where a plaintiff is proceeding pro se as in this case, pleadings from plaintiff must be, "construed liberally and interpreted to raise the strongest arguments that they suggest." (*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint,

---

[2] Defendant requests that the Court grant its partial motion to dismiss pursuant to Rule 12)(b)(6) of the Federal Rules of Civil Procedure. However, Defendant argues that Plaintiffs failed to exhaust their administrative remedies pursuant to the IDEA. (Def.'s Mem. L. Supp. Partial Mot. Dismiss ("Def.'s Mem.") at 9–12, ECF No. 16.) This argument concerns the Court's subject matter jurisdiction to hear the case. *See Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (determining that a "[f]ailure to exhaust [IDEA] administrative remedies deprives the court of subject matter jurisdiction."); *see also Polera v. Bd. Of Edu. Of Newburg Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) (same). Because a district court can *sua sponte* determine whether it has subject matter jurisdiction to hear a case, the Court will *sua sponte* determine whether it has subject matter jurisdiction to hear this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 494 n.2 (2d Cir. 2011) (stating that "a challenge to the Court's subject matter jurisdiction may be raised at any point in the proceeding, including sua sponte by the Court.") (citation omitted).

6

"however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curium)).

## DISCUSSION[3]

### I.     The Individuals with Disabilities Education Act ("IDEA")

The Individuals with Disabilities Education Act ("IDEA"), codified as 20 U.S.C. § 1415(a), "mandates federal grants to states to provide disabled children with a 'free and appropriate public education' in the least restrictive appropriate environment." *Polera v. Board of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002). A free and appropriate public education, also known as a "FAPE," "comprises 'special education and related services' –both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cty. Schs.*, 580 U.S. 154, 156 (2017) (quoting 20 U.S.C. §§ 1401(9), (26) and (29)).

Under the IDEA, an "individualized education program," most commonly known as an "IEP," is the primary mechanism used to provide each child with a FAPE. *Id.* at 158. Parents and educators of a child covered by the IDEA must jointly develop an IEP that outlines the needs of a student for each year of the child's education. *Polera*, 288 F.3d at 482. Specifically, the IEP sets forth (1) a statement of the child's present levels of academic achievement and functional performance; (2) a statement of measurable annual goals; (3) a description of how the

---

[3] For the purpose of deciding a Rule 12(b)(1) motion to dismiss, the Court may refer to and rely on evidence outside the pleadings. *J.S., ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits."); *see also Grossi v. City of New York*, No. 08-cv-1083, 2009 WL 4456307, at *3 (E.D.N.Y. Nov. 30, 2009) ("Where parties dispute subject matter jurisdiction, the Court can consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.") (collecting cases). Accordingly, the facts set forth in this memorandum and order are taken from the complaint, the affidavits of David S. Thayer, Ann and Ramon Jusino, and documents appended to the affidavits.

7

child's progress toward meeting the annual goals will be measured; (4) a statement of the educational services to be provided; (5) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class; (6) a statement of any individual accommodations necessary to measure the child's performance on standardized assessments (or an explanation of why the child cannot participate in the assessments); (7) the projected date for the implementation of services, as well as the anticipated frequency, location, and duration of the services; and (8) a plan for achieving post-secondary school goals and provisions for transitional services.  20 U.S.C. § 1414(d)(1)(A).

      The IDEA generally provides several administrative procedures and safeguards to help parents resolve disputes related to the education of their child, including the right to participate in meetings with respect to the evaluation of the child, and the right to obtain an independent educational evaluation of the child.  *See Fry*, 580 U.S. at 159; *Polera*, 288 F.3d at 481.  Of relevance here, New York State provides parents and educators with a two-tier administrative system of review of IEPs.  *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008).  Under this two-tiered system, a certified officer is selected as an impartial hearing officer and is appointed by the local board of education or state agency to both conduct the initial hearing and issue a written decision.  *Id.*  Once a decision is issued, the losing party can appeal the decision to a State Review Officer of the New York Education Department.  *Id.* (citation omitted); *see also Gardner v. Uniondale Public Sch. Dist.*, No. 08-cv-847, 2008 WL 4682442, at *5 (E.D.N.Y. Oct. 21, 2008) (stating that "[i]t is well-settled that, prior to bringing a suit in federal court under the IDEA, plaintiffs must exhaust all available administrative procedures," which in New York State include "an impartial hearing and an appeal of the hearing officer's

decision to a state review officer."). The State Review Officer's decision is final in the New York State administrative process. *See* 20 U.S.C. § 1415(g)(2), (i)(1)(B).

A party with grievances related to the education of their disabled child is required to exhaust "any available administrative remedies" before a lawsuit is filed in federal court. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020); *see also Cave*, 514 F.3d at 246 (same). And, not only is it the Plaintiffs' burden to sufficiently plead that the exhaustion requirement has been met, but she must also demonstrate that it was for the school year at issue. *See, e.g.*, *Piazza v. Florida Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 680-81 (S.D.N.Y. 2011) ("Plaintiffs must satisfy the IDEA's exhaustion requirement with respect to each school year discussed in their Complaint.") (collecting cases). Defendant maintains that Plaintiffs have failed to do so with respect to any school year after the 2019-2020 school year. (Def.'s Mem. L. Supp. Partial Mot. Dismiss ("Def.'s Mem.") at 1, ECF No. 16.) The Court agrees.

Plaintiffs' complaint does not identify specifically the school years to which their claims relate. Rather, Plaintiffs allege generally that they "exhausted the available administrative remedies regarding Defendant's refusal to implement the accommodation," and that they "have no further options at the administrative level." (Compl. ¶¶ 10–11.) This is insufficient to meet Plaintiffs' burden. That is, a plaintiff can hardly be said to demonstrate that they have exhausted their administrative remedies for a given year if he or she fails to even identify the year at issue. That said, viewing the allegations generously, the Court construes Plaintiffs' complaint as challenging Defendant's provision of a FAPE for the 2020–2021 school year. This conclusion is bolstered by the fact that Plaintiffs have previously brought a federal claim with respect to school year 2019 to 2020 and earlier. This Court ultimately dismissed that complaint as moot. In any

9

event, by their opposition Plaintiffs maintain that they exhausted their administrative remedies. (Pls.' Mem. L. Opp'n to Def.'s Partial Mot. to Dismiss ("Pls.' Opp'n) at 10-12, ECF No. 19)

However, the last school year about which any of those proceedings related was 2019 to 2020. Notably, the opinion issued on August 2, 2021 by IHO Wolman – related to Plaintiffs' final due process complaint filed on August 17, 2020 (amended on November 2, 2020) – clearly indicating that the complaint reached only the 2019-2020 school year. (*See* Decl. David S. Thayer Supp City's Mot. to Dis. ("Thayer Decl."), Ex. D at 2, Aug. 31, 2021 IHO Wolman Decision, at 2, ECF No. 15-4) ("stating that the "[due process complaint] and [a]mended [due process complaint] raise several issues regarding the provision of a . . . [FAPE] to [WJ] during the 2019-2020 twelve-month school year," and that the "sole remaining issue pertained to the provision of [RPM] that [WJ] was entitled to receive during the 2019-2020 school year and as part of his pendency program.") Indeed, IHO Wolman specifically noted that Plaintiffs' complaint "raises several issues regarding the provision of a [FAPE] to the Student during the 2019-2020 twelve-month school year," and that the "sole remaining issue pertained to the provision of [RPM] services that the Student was entitled to receive during the 2019-2020 school year and as part of his pendency program." (*Id.* at 2.) Accordingly, on the merits, the IHO fashioned a remedy related to the 2019-2020 school year. Specifically, she found that "RPM services should have been in the Student's IEP and provided to him during the 2019-2020 school year," and ordered Defendant to reimburse the parents for costs of providing RPM services and instruction to W.J. "during the 2019-2020 school year and during the pendency of this proceeding and any appeals thereof." (*Id.* at 5.)

The Court cannot help but note that IHO De Leon's May 24, 2020 order also summarized Plaintiffs' due process complaint as alleging that W.J. had been denied a FAPE "for the 2019-

10

2020 school year." (Thayer Decl., Ex. B at B003.) IHO De Leon even stated that "[t]he hearing record is clear, and the Parent conceded as much, that [IHO Farago] did not Order continued funding for continued services, but merely held the DOE take into consideration the recommendation that the Student continue at home RPM services," and "merely held that the [Committee on Special Education] consider all recommendations in relevant reports (which it did), and fund services for PAST school years." (*Id.* at B011–12.) IHO De Leon ultimately determined that Defendant had offered the student a FAPE for the 2019-2020 school year, denied Plaintiffs their requested relief, and declined to determine W.J.'s pendency placement while the due process proceeding was pending. (*Id.* at B019; Thayer Decl., Ex. C, ECF No. 15-3, at 1.) He also ordered that the CSE produce a new IEP for the student's 2020-2021 school year. (Thayer Decl., Ex. B B021.) Therefore, this order makes clear that Plaintiffs sought relief only for the 2019-2020 school year, and that an IEP for the 2020-2021 school year was not even created yet.

Plaintiffs failed to meet their burden to sufficiently allege that they exhausted their administrative remedies for the school years after 2019-2020. Of course, this does not necessarily end the Court's inquiry.

## II. Futility Exception

Plaintiffs maintain that even if the Court were to conclude – as it has – that they did not exhaust their administrative remedies, that they should be excused from doing so. (Pls'. Opp'n at 12.) It is true that the IDEA's exhaustion requirement can be excused where exhaustion would be futile. *See Cave*, 514 F.3d at 249. Futility exists where "administrative procedures do not provide an adequate remedy," or where there are "systemic violations that could not be remedied by local or state administrative agencies." *Levine v. Greece Cent. Sch. Dist.*, 353 Fed. App'x

11

461, 464 (2d Cir. 2009) (citations omitted); *Cave*, 514 F.3d at 249. The burden of demonstrating futility belongs to the party who seeks to avoid the exhaustion requirement. *Polera*, 288 F.3d at 478. Here, Plaintiffs fail to meet their burden.

In support of their claim to an exemption from the exhaustion requirement, Plaintiffs offer little. Indeed the argument is set out in two sentence. *First*, Plaintiffs simply argue that they "may bypass the administrative process because exhaustion would be futile or inadequate." (Pls.' Opp'n at 12–13.) However, Plaintiffs do not explain how or why futility applies here. To the extent Plaintiffs suggest that administrative procedures generally do not provide an adequate remedy, this argument has no merit. As demonstrated in Plaintiffs' complaint, Plaintiffs have resorted to the administrative process repeatedly for claims related to the 2015-16, 2016-17, 2017-18 and 2018-19 school years – with much success. (Compl. ¶ 52; Def.'s Mem. at 2.) Absent from the complaint is any allegation that might explain why they cannot do the same regarding the implementation of IEPs that concern subsequent school years. (Def's. Reply at 4, ECF No. 20.); *see, e.g.*, *Cave*, 514 F.3d at 250 (finding that "appellants [do not] make a plausible argument that the administrative process is so structurally tainted that they would not have been afforded a fair and impartial forum to present their claims").

*Second*, Plaintiffs argue that futility applies because IHO Wolman expressed that she has no power to correct Defendant's violation, and thus rely on *J.S. ex rel N.S. v. Attica Central Schools*, 386, F.3d 107 (2d Cir. 2004) to support their point. (Pls.' Opp'n at 12.) However, *J.S. ex rel N.S.* is distinguishable. In that case, the Second Circuit affirmed the district court's decision that plaintiffs' exhaustion of administrative remedies was futile. 386 F.3d at 115. The Second Circuit reasoned that the complaint contained many allegations of the School District's "total failure to prepare and implement" IEPs and a host of other systemic problems, such as the

School District's failure to notify parents of meetings as required by law, to provide parents with legally required progress reports, to provide appropriate training to school staff, to perform timely evaluations and reevaluations of disabled children, and to perform legally required responsibilities in a timely manner. *Id.*

Plaintiffs' complaint, however, does not contain allegations even close to what plaintiffs allege in *JS ex rel N.S.* Instead, Plaintiffs complain about harm to W.J., not to other students. Courts have refused to apply the futility requirement where a plaintiff pleads allegations related to individual harm. *See, e.g.*, *Cave*, 514 F.3d at 250 (finding that futility did not apply in part because appellants "complain[ed] about the school's denial of his request that a service dog be permitted to accompany him in class," and that "[t]here is no allegation of a system-wide violation of the IDEA's mandates or of a district-wide policy of discrimination against hearing-impaired students."); *see also Frank v. Sachem School Dist.*, 84 F. Supp. 3d 172, 192 (finding that plaintiff's ADA claim is not exempted under the futility exception because plaintiff challenged the IHO's individual decision regarding her son and did not allege system-wide discrimination). The Court will do the same here.

The Court finds that a failure to implement exception would not apply here. Plaintiffs have not established that their claims fall within this exception because they have not submitted copies of W.J.'s April 3, 2020 and March 23, 2021 IEPs in order for the Court to infer the specific requirements of the IEPs that Defendant failed to implement for the 2020-2021 and 2021-2022 school years. The district court in *YM by Moskowitz* similarly found that the failure to implement exception did not apply, in part, for these exact reasons. No. 21-CV-6861 (AMD) (CLP), 2023 WL 2187165, at *6 (E.D.N.Y. Feb. 23, 2023) (finding that plaintiffs did not establish that their claims fall within the "narrow" failure to implement exception, in part,

13

because plaintiffs failed to submit copies of the IEPs or detail the services that defendants did not provide, which the court could use to determine whether they met the exception).[4]

Therefore, Plaintiffs failed to establish why it would be futile to exhaust their administrative remedies for the school years after 2019-2020.

## CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss the complaint is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
      September 29, 2023

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

---

[4] Plaintiffs' reliance on IHO Wolman's comments at the March 18, 2021 impartial hearing to argue that a resort to administrative procedures is futile are also unhelpful. (Pls.' Opp'n at 11.) Based on the excerpts provided by Plaintiffs, IHO Wolman held a hearing to address Mr. Jusino's email seeking a pendency order nullifying the April 3, 2020 IEP. (Decl. Ramon K. Justino and Ann M. Jusino Supp. Pls'. Opp.'n, Ex. 5 at 4–5, 7, ECF No. 18-5.) IHO Wolman said that this request "way beyond the scope of anything that [she] could grant." (*Id.* at 10.) IHO Wolman also stated that although she can direct Defendant to provide a pendency program that contains RPM, "[i]f it turns out that the Department of Education does not implement that order, there's not much that I could do to force them to implement an order. All I can do is issue an order. I can – if they don't implement, I can issue 50 orders, it's not going to make a difference." (*Id.* at 18-19.) However, these statements are unrelated to the 2020-21 and 2021-22 school years and are nothing more than IHO Wolman explaining the general limits of her power.